**Opinion issued August 29, 2023**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-21-00491-CV**

———————————

## IN THE MATTER OF THE GUARDIANSHIP OF JUDY R. SEMRAD, AN INCAPACITATED PERSON

---

**On Appeal from the County Court at Law No. 4**
**Fort Bend County, Texas**
**Trial Court Case No. 20-CPR-034009**

---

## MEMORANDUM OPINION

Staci Semrad appeals from the county court's final judgment closing the guardianship of her late mother. In a dozen issues, she challenges the final judgment and various rulings the county court made before or after the entry of judgment. For the reasons explained below, we reverse the county court's judgment and remand this cause to the county court for further proceedings consistent with our opinion.

# BACKGROUND

In 2015, Probate Court No. 1 of Bexar County appointed David Semrad as the permanent guardian of his wife, Judy Semrad, and as the permanent community administrator of their community estate.

In 2019, David and Judy moved to Katy to be closer to family, and the guardianship was transferred to Fort Bend County.

In January 2021, David died. One of David and Judy's daughters, Staci Semrad, applied in County Court at Law No. 4 of Fort Bend County to be appointed successor guardian of Judy's person and community administrator. Their other daughter, Tavi Sellers, subsequently applied for appointment as well, resulting in a contested guardianship proceeding.

Staci and Tavi contemporaneously executed a Rule 11 agreement regarding the guardianship proceeding. Among other things, they agreed that:

- Staci would be appointed guardian of Judy's person at the final hearing and would make all treatment and residential decisions in the interim;

- Tavi would be appointed guardian of Judy's estate at the final hearing, which consisted of a retirement account, motor vehicles, and a home; and

- Tavi, as executor of David's will, would probate his will so that the home could be sold "in the guardianship and in decedent's estate."

Staci and Tavi also agreed the latter would seek appointment of an attorney ad litem to represent Judy in the contested guardianship proceeding. Tavi did so, and the county court appointed Alicia Klosowsky as attorney ad litem.

In April 2021, Klosowsky moved for the appointment of a guardian ad litem to represent Judy's interest. The county court appointed Amber Homolka to this position, and it directed Homolka to interview Judy, investigate the need for guardianship, and file a written report concerning Judy's best interest.

In May 2021, Staci twice supplemented her guardianship application. In her supplements, she stated she had incurred expenses in caring for her mother. She also stated she had incurred legal fees due to her need for representation in the guardianship proceeding. Staci requested reimbursement of her expenses and the award of her fees.

That same month, the county court held an emergency hearing at Homolka's request due to concerns that had been expressed about Judy's medical care. At the hearing, the county court heard testimony from three witnesses: Staci, Tavi, and Homolka. Afterward, the county court discharged Homolka as guardian ad litem and appointed her as the temporary guardian of Judy's person. Within a week or so, the county court also entered an order approving $2,633.75 in fees to Homolka for the legal services she had rendered in her capacity as guardian ad litem. The court ordered the county to pay these fees.

Judy died later in May, while the proceeding remained pending.

In early June 2021, Klosowsky applied for payment of her legal fees as attorney ad litem in the amount of $3,637.50. The county court approved her fee

application and ordered this amount to be paid from Judy's estate. In the same order, the court discharged Klosowsky as attorney ad litem.

On June 10, Tavi nonsuited her guardianship application.

The same day that Tavi filed her nonsuit, she and Homolka earlier filed a joint final report seeking to discharge Homolka as temporary guardian and close the guardianship and community administration. Tavi joined the final report in her capacity as the independent executor of David's estate.

On June 11, the county court signed an order approving the joint final report and decreed that Judy's "guardianship of the person, her community administration, and her temporary guardianship are closed." In the same order, the court also discharged Homolka as temporary guardian of Judy's person. A date-time stamp on the court's order reflects that it was not filed until June 30.

In the interim between the signing of the order closing the guardianship proceeding on June 11 and the filing of the order on June 30, Staci filed an application for reimbursement on June 23. In total, she sought to be reimbursed for $6,716.69 in expenses from Judy's estate. This amount primarily consisted of travel and lodging expenses incurred in caring for Judy during the pendency of the contested guardianship proceeding. Staci attached various receipts.

Staci contemporaneously filed a separate application for the payment of attorney's fees she incurred in the contested guardianship proceeding. She sought

4

$17,772.81. She relied on section 1155.054 of the Texas Estates Code and sought payment from Judy's estate. Staci supported her fee application with an affidavit made by her lawyer and his billing records.

Tavi moved to dismiss Staci's applications on the ground that Judy's death made all guardianship-related matters moot and deprived the county court of jurisdiction, with the exception of addressing the fees of court-appointed lawyers. Tavi maintained that Staci's applications for reimbursement and fees instead had to be presented to the administrator of Judy's probate estate.

In response, Staci argued that Tavi had nonsuited her guardianship application and thus was a nonparty without standing to oppose the relief Staci sought. Staci further argued that the county court presiding over the guardianship proceeding was the only forum with the authority to entertain her applications for reimbursement and fees, even if an award must ultimately be paid out of Judy's probate estate.

The record does not contain rulings on Staci's applications for reimbursement or fees. Nor does it contain a ruling on Tavi's motion to dismiss these applications.

In early July 2021, Staci moved for reconsideration of the county court's order closing the contested guardianship proceeding without considering her applications for reimbursement and fees. Staci argued that because the court's order was signed June 11 but only filed June 30, she did not have the opportunity to object to either the closure of the guardianship proceeding or the approval of the temporary

guardian's final report. Tavi opposed the motion for reconsideration. Both parties briefed the issues, primarily focusing on whether the county court had jurisdiction to consider Staci's applications for reimbursement and fees after Judy's death.

The county court held a hearing on Staci's motion for reconsideration in late August 2021. Two days later, on August 25, the court denied her motion for reconsideration. In doing so, the county court explained that it had only ever appointed a temporary guardian of Judy's person, but not a guardian as to Judy's estate (or successor community administrator), after David's death. Though the court was not explicit on this point, it seems to have agreed with Tavi's position that the county court lacked jurisdiction to consider Staci's applications, given that Judy had died after David, which resulted in there being no ward or ward's estate.

On September 1, the county court awarded Homolka $2,293.90 for legal services rendered in her capacity as temporary guardian. The court specified that the award was "to be paid by the ward's estate." Though the county court had already discharged Homolka as temporary guardian in its June 11 order, the court's September 1 order also stated it was discharging her.

Staci then filed her notice of appeal roughly one week later.

## DISCUSSION

Staci, who is pro se on appeal, challenges several of the county court's rulings. She does so in twelve separate issues, many of which are essentially intertwined.

**Refusal to Consider Reimbursement and Fee Applications**

In her fourth and fifth issues, Staci contends the county court erred both in rendering a final judgment without first considering her applications for reimbursement and attorney's fees and in denying her motion for reconsideration.

Staci maintains that the county court's final judgment—its decision closing the guardianship proceeding—and its refusal to reconsider that decision and reopen the guardianship proceeding are erroneous because the county court failed to heed controlling precedent. In particular, she argues the county court erroneously concluded it lacked subject-matter jurisdiction to hear her applications due to Judy's death. Staci posits that whether she is entitled to reimbursement of expenses or attorney's fees remains a justiciable controversy even after the death of the ward.

*Standard of Review*

In general, we review a motion for reconsideration, which in this instance is the equivalent of a motion for new trial, for an abuse of discretion. *See, e.g.*, *Mullins v. Martinez R.O.W., LLC*, 498 S.W.3d 700, 705 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (reviewing trial court's rulings on motion to reconsider summary judgment and motion for new trial for abuse of discretion). A trial court abuses its discretion when, among other things, its decision is contrary to law. *Epstein v. Hutchison*, 175 S.W.3d 805, 807 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); *see also Harold v. Carrick*, No. 01-12-00175-CV, 2013 WL 4828744, at *1 (Tex.

7

App.—Houston [1st Dist.] Sept. 10, 2013, pet. denied) (mem. op.) (reciting that trial court abuses discretion when its ruling is contrary to caselaw). When a ruling turns on a question of law, we review that question de novo. *Epstein*, 175 S.W.3d at 807. Whether a ward's death moots a controversy and thereby deprives the trial court of subject-matter jurisdiction to hear the controversy is a question of law. *See David Powers Homes v. M.L. Rendleman Co.*, 355 S.W.3d 327, 333–34 (Tex. App.— Houston [1st Dist.] 2011, no pet.) (stating mootness implicates subject-matter jurisdiction, the existence of which is legal question that courts review de novo).

### *Analysis*

As the county court's subject-matter jurisdiction is a threshold issue, we must take it up first. *See In re Guardianship of Fairley*, 650 S.W.3d 372, 380–82 (Tex. 2022) (resolving jurisdictional issues first, including whether ward's death ended guardianship as well as trial court's subject-matter jurisdiction as to guardianship).

Texas law allows for the creation of a guardianship of the person or an estate or both. *Id.* at 380–81. Together, Staci and Tavi applied for guardianship of their mother Judy's person and estate. Judy died before their applications were resolved. At the time of Judy's death, the county court had only appointed a temporary guardian, Homolka, as to Judy's person. There was no guardian of Judy's estate. (Previously, before his death, Staci and Tavi's father, David, had been the guardian

of Judy's person and had administered their joint property in his capacity as community administrator.)

When a ward, like Judy, dies, a guardianship of the person necessarily ends. *Id.* at 381. Pending disputes about the guardianship of the person itself, such as whether Staci or Tavi should be appointed as guardian of Judy's person, become moot, thereby depriving a trial court of the subject-matter jurisdiction to resolve them. *See Easterline v. Bean*, 49 S.W.2d 427, 428–31 (Tex. 1932) (holding when ward subject to guardianship dies, probate court loses jurisdiction save for settling and closing guardianship and guardian can no longer act on behalf of dead ward); *see, e.g.*, *In re Guardianship of Venegas*, 615 S.W.3d 374, 375–76 (Tex. App.—El Paso 2020, no pet.) (concluding appeal was mooted by death of ward because sole disputes concerned whether trial court abused discretion in finding ward was totally incapacitated and granting application seeking guardianship of ward's person); *but cf. In re Guardianship of Fairley*, 650 S.W.3d at 381 (noting that Estates Code authorizes guardian of person to take certain, specified actions even after ward dies).

However, the trial court does not immediately lose subject-matter jurisdiction with respect to the underlying guardianship proceeding upon the death of the ward. Rather, upon the death of the ward, the trial court continues to have subject-matter jurisdiction over the guardianship proceeding until the trial court settles and closes the guardianship and discharges any appointed guardians. *In re Guardianship of*

9

*Fairley*, 650 S.W.3d at 381. Other disputes relating to the guardianship, such as those involving any attorney's fees ostensibly recoverable within the proceeding remain in controversy and must be addressed as part of settling and closing the guardianship. *E.g.*, *Zipp v. Wuemling*, 218 S.W.3d 71, 74 (Tex. 2007) (per curiam) (holding that whether former guardian had been properly removed and had legally cognizable interest in fees and costs remained justiciable controversy even after ward died); *Whatley v. Walker*, 302 S.W.3d 314, 320 n.10 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (noting that death of ward mooted appeal of order appointing guardian but that dispute as to who should settle estate remained live controversy).

These jurisdictional principles are embodied in the Estates Code, which provides that a guardianship proceeding begins with the filing of a guardianship application and ends when "the guardianship is settled and closed." TEX. EST. CODE § 1022.002(d); *see In re Guardianship of Fairley*, 650 S.W.3d at 381 (relying on section 1022.002(d) for purposes of deciding when trial court's jurisdiction ends). The Estates Code requires the trial court to settle and close a guardianship proceeding upon the death of the ward. *See* EST. §§ 1202.001(b)(1), 1204.001(a), (b)(1) (providing guardianship and guardianship of estate shall be settled and closed when ward dies). But the Code envisions that a guardian and the court may need to take various actions before a guardianship proceeding can be settled and closed. *See, e.g.*, *id.* § 1204.051 (authorizing guardian, with court approval, to make funeral

10

arrangements and pay funeral expenses and all other debts before guardianship of person or estate of ward is closed upon ward's death); *id.* at § 1204.101 (directing guardian of estate to present to court verified account for final settlement when guardianship of estate is required to be settled and closed); *id.* at § 1204.108(a)–(b) (instructing guardian of person to deliver all of deceased ward's property in guardian of person's possession to personal representative of deceased ward's estate or other person entitled to property and to file affidavit regarding disposition of such property on settlement of guardianship of estate).

Judy died on May 23, 2021. Tavi filed a suggestion of death notifying the county court two days later. On June 10, Tavi and Homolka jointly moved to discharge Homolka as temporary guardian of Judy's person and close the proceeding. The next day, the county court signed the order discharging Homolka and closing the guardianship of Judy's person. But this order was not filed in the county court's records until June 30, and Staci represents that she did not receive notice of the order beforehand. About a week before June 30, Staci had applied for reimbursement of certain expenses and an award of attorney's fees. These applications were consistent with her supplemental pleadings, filed earlier in May, in which she sought recovery of these expenses and fees from Judy's estate. But due to the sequence of events, the county court never addressed Staci's applications for reimbursement and fees before it signed the order closing the guardianship

11

proceeding on June 11, and when Staci sought reconsideration of that order afterward, the county court agreed with Tavi that it lacked subject-matter jurisdiction to consider Staci's applications due to Judy's death.

On appeal, Staci argues she is entitled to reimbursement under section 1155.101 of the Estates Code, which provides that a "guardian is entitled to reimbursement from the guardianship estate for all necessary and reasonable expenses incurred in performing any duty as a guardian." EST. § 1155.101. Though Staci was not appointed as Judy's guardian, Staci and Tavi did sign a Rule 11 agreement—filed with the county court on January 11, 2021—providing that Staci would be appointed guardian of Judy's person at the final hearing and would make all decisions concerning their mother's treatment and residence in the interim. This arrangement under which Staci made all decisions concerning Judy's treatment and residence did not come to an end until the May 2021 emergency hearing, after which Homolka was appointed temporary guardian as to Judy's person. Under these circumstances, the language of section 1155.101 arguably excludes reimbursement, as it applies solely to guardians. But there is authority for reimbursing persons who undertake the responsibilities of a guardian of the person when no guardian of the person exists and discharge these responsibilities in good faith with the knowledge of the court. *Pemberton v. Leatherwood*, 218 S.W.2d 500, 506–07 (Tex. App.—

12

Eastland 1949, writ ref'd n.r.e.). Thus, it is possible on the record before us that Staci may be entitled to reimbursement of some expenses.

On appeal, Staci also argues she is entitled to attorney's fees under section 1155.054 of the Estates Code, which provides that a trial court that creates a guardianship "may authorize the payment of reasonable and necessary attorney's fees, as determined by the court, in amounts the court considers equitable and just" from the ward's estate to an attorney who represented an applicant, whether or not the applicant is appointed as guardian, so long as "the court finds that the applicant acted in good faith and for just cause in the filing and prosecution of the application." EST. § 1155.054(a)–(c). Here, the county court appointed a temporary guardian, and thus created a guardianship. *See id.* § 1002.012(a)(3) (defining "guardian" to include any "temporary guardian"). This makes the attorney's fee provision applicable. *See id.* § 1155.054(a) (providing for possibility of fee award when court creates guardianship); *In re Guardianship of Burley*, 499 S.W.3d 196, 199–200 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (noting that section 1155.054 allows award of fees when court creates guardianship, provided applicant acted in good faith and for just cause); *see also* Est. § 1251.102 (providing that provisions relating to guardianship of persons and estates "apply to the temporary guardianship of the persons and estates of incapacitated persons, to the extent the provisions may be

made applicable"). Thus, it is possible on the record before us that Staci could recover some attorney's fees.

The county court did not lose jurisdiction to decide Staci's applications for reimbursement and attorney's fees when the ward—her mother, Judy—died. In this respect, our Supreme Court's decision in *Zipp* is controlling. In that case, the Court held that a dispute about whether fees were cognizable survived the ward's death. *Zipp*, 218 S.W.3d at 74; *see also McIntyre v. McIntyre*, No. 14-18-00609-CV, 2019 WL 4511323, at *1–2 (Tex. App.—Houston [14th Dist.] Sept. 19, 2019, no pet.) (mem. op.) (relying on *Zipp* for proposition that dispute about attorney's fees remained justiciable controversy and did not become moot upon death of ward); *In re Guardianship of Peterson*, Nos. 01-15-00567-CV & 01-15-00586-CV, 2016 WL 4487511, at *5 (Tex. App.—Houston [1st Dist.] Aug. 25, 2016, no pet.) (mem. op.) (relying on *Zipp* in part in holding that probate court did not err in entering judgment on mediated settlement agreement parties to guardianship proceeding executed before proposed ward's death to resolve various guardianship-related disputes).

In the county court, Tavi argued in part that this case differs from ones like *Zipp*, inasmuch as the county court had only appointed a temporary guardian of the person but not a guardian of the estate before Judy died. Because the guardianship of Judy's person ended on her death and there never was a guardianship of Judy's estate, Tavi maintained that there was no guardianship estate to settle and close upon

14

Judy's death or a guardianship estate from which Staci could be reimbursed or recover her attorney's fees in this proceeding. *See* Est. §§ 1155.054(a)–(b), 1155.101 (providing trial court generally should award applicant's attorney's fees from "ward's estate" and reimburse guardian's expenses from "guardianship estate").

We disagree with Tavi to the extent she maintains that these circumstances make a jurisdictional difference that precludes reimbursement or a fee award. Here, "estate" and "guardianship estate" are statutorily defined terms. These terms are defined by the Estates Code simply as "a ward's or deceased ward's property." *Id.* § 1002.010. Hence, when the Code provides for "reimbursement from the *guardianship estate* for all necessary and reasonable expenses incurred in performing any duty as a guardian" and the award of reasonable and necessary attorney's fees from "the ward's *estate*," *id.* §§ 1155.054(a), 1155.101 (emphases added), the Code is merely specifying that any sums awarded shall be recouped from the "ward's or deceased ward's property." *Id.* § 1002.010; *see also In re Guardianship of Whitt*, 407 S.W.3d 495, 499 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (indicating that under Probate Code's previously applicable and materially alike provisions, which are now superseded by provisions of Estates Code, "ward's estate" exists whenever guardian is appointed); *In re Guardianship of Bayne*, 171 S.W.3d 232, 236 (Tex. App.—Dallas 2005, pet. denied) (rejecting

15

contentions that "ward's estate" ceases to exist when ward dies and that one must therefore apply to executor or administrator of decedent's estate for payment instead of guardian). The Estates Code does not limit the ability of parties to seek reimbursement of guardianship duty expenses or recovery of attorney's fees for guardianship applications to proceedings in which the trial court has appointed a guardian of the ward's estate. In addition to being inconsistent with the Estate Code's definitions of "estate" and "guardianship estate," Tavi's proposed interpretation of the Code is inconsistent with the attorney's fee provision itself, which authorizes a "court that creates a guardianship" for a ward to award attorney's fees for guardianship applications, without limiting this authorization to guardianships of the estate. *Id.* § 1155.054(a); *see also id.* at § 1002.012(b) (providing that, unless expressly provided otherwise, term "guardian" includes "guardian of the person" and "guardian of the estate"). Indeed, subject to court approval, an appointed guardian may pay debts "out of the deceased ward's estate" before "a guardianship of the person *or* estate of a ward is closed on the ward's death" in settling and closing the guardianship proceeding. *Id.* § 1204.051 (emphasis added).

To be clear, we do not hold that Staci is entitled to reimbursement or attorney's fees. The recovery of both turns on the outcome of factual inquiries the county court never made due to its erroneous conclusion that it lacked subject-matter jurisdiction to consider Staci's applications. Any right to reimbursement requires a

16

showing that Staci served as a de facto guardian of her mother's person for some period of time and discharged her responsibilities in good faith. *Pemberton*, 218 S.W.2d at 506–07. Similarly, any right to fees depends on a showing that Staci filed and prosecuted her guardianship application in good faith and for just cause. EST. § 1155.054(c). These factual issues are not developed in the record on appeal. In addition, the fee statute at issue is discretionary, not mandatory, and requires a showing that the fees in question were both reasonable and necessary. *See id.* § 1155.054(a) (specifying that court that creates guardianship "may authorize the payment of reasonable and necessary attorney's fees"); *Goode v. McGuire*, No. 01-20-00028-CV, 2021 WL 4432534, at *9 (Tex. App.—Houston [1st Dist.] Sept. 28, 2021, no pet.) (mem. op.) (holding section 1155.054(a) gives court that has created guardianship "discretion to award attorney's fees" to applicant). So the statute does not necessarily require a fee award even when good faith and just cause are shown.

We hold only that the county court erred in concluding it lacked subject-matter jurisdiction to consider Staci's applications and instead should have considered her applications. Therefore, we sustain Staci's fourth and fifth issues to the extent she argues the county court erred in denying her motion for reconsideration by disregarding controlling precedent on the issue of subject-matter jurisdiction. On remand, we direct the county court to grant Staci's motion for reconsideration, reopen the guardianship proceeding for the purpose of hearing her applications for

17

reimbursement of expenses and attorney's fees, and make a decision based on her applications as to whether she is entitled to reimbursement and/or attorney's fees.

## Temporary Guardian's Attorney's Fees

In her ninth issue, Staci argues the county court erred in awarding Homolka her fees as temporary guardian on September 1, 2021, as the court's plenary power had expired. In her tenth issue, Staci argues that the county court erred in awarding these fees because Homolka's request was not verified or supported by affidavit.

### *Standard of Review*

Whether a trial court acted after its plenary power expired is a question of subject-matter jurisdiction, which we review de novo. *In re Est. of Brazda*, 582 S.W.3d 717, 731 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *Schroeder v. LND Mgmt.*, 446 S.W.3d 94, 97 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

Assuming that the trial court makes a fee award while it retains the plenary power to do so, we generally review the trial court's approval of attorney's fees incurred by a guardian for an abuse of discretion. *Epstein*, 175 S.W.3d at 807.

### *Analysis*

The county court closed the guardianship proceeding on June 11, 2021, when it signed its written order doing so. *See Crampton v. Comm'n for Lawyer Disc.*, No. 01-20-00249-CV, 2022 WL 961557, at *16 (Tex. App.—Houston [1st Dist.] Mar. 31, 2022, no pet.) (mem. op.) (stating that when trial court signs judgment without

18

first making oral pronouncement in open court, act of signing constitutes rendition of judgment). Staci timely moved for reconsideration on July 7, 2021, which the county court denied on August 25, 2021, the seventy-fifth day after it rendered judgment. *See* TEX. R. CIV. P. 329b(c) (allowing trial court 75 days after signing of judgment to decide timely motions for new trial); *see also Adams v. Ross*, No. 01-15-00315-CV, 2016 WL 4128335, at *2 (Tex. App.—Houston [1st Dist.] Aug. 2, 2016, no pet.) (mem. op.) (stating that motion for reconsideration seeking modification or reversal of judgment is treated as motion for new trial). Under these circumstances, the county court's plenary power did not expire for another 30 days after denying reconsideration, on September 24, 2021. *See* TEX. R. CIV. P. 329b(e) (providing trial court has plenary power until 30 days after all timely new-trial motions are overruled); *In re Dickason*, 987 S.W.2d 570, 571 & n.3 (Tex. 1998) (per curiam) (relying on Rule 329b(e) for proposition that trial court has plenary power for 30 days after it overrules timely new-trial motion).

The county court signed its written order awarding Homolka attorney's fees in the amount of $2,293.90 for her work as temporary guardian on September 1, 2021. Thus, contrary to Staci's position, the county court made this fee award before its plenary power expired. *See, e.g.*, *Price Constr. v. Castillo*, 147 S.W.3d 431, 440 & n.2 (Tex. App.—San Antonio 2004, pet. denied) (supp. op. on en banc reconsideration) (holding trial court retained plenary power for 30 days after denial

of new-trial motion and thus had jurisdiction to modify its judgment to award ad litem fees within this time). We overrule Staci's ninth issue concerning the county court's plenary power.

As to Staci's complaint that Homolka's fee request was not verified or supported by affidavit, the record is limited. The county court's September 1 order recites that Homolka made "an application for the payment" of her attorney's fees. However, the record merely contains a proposed order awarding these attorney's fees filed by Homolka and invoices detailing her work as temporary guardian. Homolka filed these documents with the court on June 8.

The county court then signed its final judgment closing the guardianship proceeding three days later, on June 11, without awarding these fees. As previously noted, the court did not award Homolka her fees as temporary guardian until September 1.

In the interim, in her motion for reconsideration of the court's order closing the guardianship proceeding, Staci objected to Homolka's then-pending fee request on the basis that it was made "without filing an application or any affidavit supporting her claimed fees" and was based on "unverified invoices." Despite not having considered this objection, the county court denied reconsideration.

Given the record before us, we sustain Staci's tenth issue because the county court erred in not considering Staci's objection that Homolka's request for attorney's

fees as to her service as temporary guardian is unverified and thus cannot support an award. Thus, on remand, we direct the county court to hear and decide this objection to Homolka's request for these attorney's fees. To the extent that Staci's objection has merit but the deficiency, if any, in Homolka's application for fees can be cured, the county court may, in the exercise of its discretion, allow Homolka to do so.

**Discharge of the Temporary Guardian**

In her first issue, Staci argues in part that the county court's premature closure of the guardianship proceeding deprived her of the opportunity to object to the discharge of Homolka as temporary guardian. In her sixth issue, Staci argues that the county court erred in discharging Homolka as temporary guardian because Homolka failed to provide information about the disposition of the ward's property required by sections 1204.108(a)–(b) and 1204.151 of the Estates Code. Staci argues that she has an interest in a proper accounting as she is a descendant of the ward. Below, she raised these complaints in her motion for reconsideration of the county court's order discharging the temporary guardian and closing the proceeding.

***Standard of Review***

We generally review a trial court's rulings in guardianship proceedings for an abuse of discretion. *See In re Guardianship of Bayne*, 171 S.W.3d at 235 (saying so as to "court's rulings on guardianship and probate applications" in general); *see also In re Guardianship of Erickson*, 208 S.W.3d 737, 743 (Tex. App.—Texarkana 2006,

21

no pet.) (stating that court reviews removal of guardian for abuse of discretion). And, as previously noted, we likewise review a trial court's denial of reconsideration for an abuse of discretion. *Mullins*, 498 S.W.3d at 705. A trial court has no discretion to disregard statutory directives. *See Turrubiartes v. Olvera*, 539 S.W.3d 524, 528 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (stating that trial court "has no discretion to misconstrue the law or misapply the law to the facts" and thus abuses its discretion "when it fails to analyze or apply the law correctly" to facts at hand).

*Analysis*

We reject Staci's complaints about the discharge of the temporary guardian and the temporary guardian's final accounting because the provisions on which Staci relies solely apply when the trial court has appointed a guardian of the estate. As Staci concedes, however, "no guardian of the estate was appointed" for her mother.

When a guardianship of the estate must be settled, the guardian of the estate must present to the court a verified account for final settlement. EST. §§ 1204.101–.102. When the guardian of the estate does so, the court clerk must issue citation notifying certain persons of the time and place that the court will consider the final account, so that these persons may contest the account. *See id.* § 1204.105.

A guardian of the person also has certain accounting obligations, but these obligations solely apply when a guardianship of the estate must be settled. *See id.* § 1204.108 ("Delivery of Ward's Property in Possession of Guardian of the Person

22

*on Settlement of Guardianship of the Estate*") (emphasis added). When this is the case, the guardian of the person must deliver the property of a deceased ward to the personal representative of the deceased ward's estate or other person entitled to the property. *Id.* § 1204.108(a). And, if none of the ward's property is in the guardian of the person's possession or control, then the guardian of the person must no later than 60 days after the date on which the guardianship must be settled file an affidavit identifying to whom the ward's property was delivered. *Id.* § 1204.108(b); *see also id.* § 1204.109 (providing that court must order any part of estate in guardian's possession to be delivered to personal representative of deceased ward's estate or any other person entitled to estate when guardianship estate is finally settled); *id.* § 1204.151 (providing that court shall enter order discharging guardian "if, on final settlement of the estate, none of the estate remains in the guardian's possession").

The Texas Estates Code does not have any corresponding accounting provisions applicable to a guardian of the person when, as in this case, there has not also been a guardianship of the estate. Presumably, the Code lacks such accounting provisions because it generally does not contemplate that a ward's property will come into the possession or control of a guardian in the absence of a guardianship of the estate. *Compare id.* § 1151.051 (setting forth general powers and duties of guardian of person, which do not include possession and management of ward's property), *with id.* § 1151.101 (setting forth general powers and duties of guardian

of estate, which do include possession and management of ward's property).

In this particular case, Homolka was the temporary guardian of Judy's person for a mere 20 days, as the county court appointed her as temporary guardian at the emergency hearing in May and Judy died 20 days later. Staci has not alleged that any of Judy's property came into Homolka's possession or control during this brief tenure or that Homolka retains any of Judy's property. Nor does the record suggest that Homolka took possession or control of any property when she was guardian. And Staci has not identified any ground for objecting to the discharge of Homolka as temporary guardian apart from the purported failure to make a proper accounting.

Given the law and the record before us, we overrule Staci's first and sixth issues regarding the discharge of Homolka and her final accounting to the court.

**Guardian ad Litem's Report and File**

In her seventh issue, Staci contends that the county court erred by effectively sealing the guardian ad litem's report, thereby withholding its contents from public view. Staci claims that she discovered that the report contains unspecified "false statements" about her after the county court belatedly shared the report with the parties. She argues that these falsehoods harmed her because they were the basis on which Homolka was appointed temporary guardian of Judy's person, displacing Staci as the decisionmaker concerning her mother's medical care. Staci further argues that she was harmed by these false statements because they jeopardized her

24

application to be appointed as the guardian of her mother's person. Staci requests that we instruct the county court to correct the false statements and then include the guardian ad litem's report in the clerk's file, making it available to the public.

In her twelfth issue, Staci contends that the county court also erred by denying her post-judgment discovery requests for access to the guardian ad litem's case file and any correspondence between the county court and the guardian ad litem. Staci maintains that these documents, like the guardian ad litem report itself, are court records and thus cannot be sealed or withheld from public view and examination.

### *Standard of Review*

We review a trial court's rulings as to whether documents are court records, whether to seal court records, and whether documents are subject to discovery for an abuse of discretion. *Gen. Tire, Inc. v. Kepple*, 970 S.W.2d 520, 526 (Tex. 1998). But if the trial court makes an error of law, we can only reverse if the error probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting her appellate issues to us. *See* TEX. R. APP. P. 44.1(a).

### *Analysis*

Assuming for argument's sake that the county court abused its discretion for the reasons advocated by Staci, a subject on which we offer no opinion, her complaints are moot, and any error is thus harmless and not a basis for reversal.

When a trial court appoints a guardian ad litem in a guardianship proceeding,

25

the guardian ad litem represents the interests of the incapacitated person. EST. § 1054.051. The guardian ad litem is "an officer of the court" who is obligated to "protect the incapacitated person whose interests the guardian has been appointed to represent in a manner that will enable the court to determine the action that will be in that person's best interests." *Id.* § 1054.054(a)–(b). To fulfill this obligation, the guardian ad litem must "investigate whether a guardianship is necessary for the proposed ward" and "evaluate alternatives to guardianship and supports and services available to the proposed ward that would avoid the need for appointment of a guardian." *Id.* § 1054.054(c). The "information gathered by the guardian ad litem" in the course of this investigation and evaluation "is subject to examination by the court." *Id.* § 1054.54(d). Though a report is neither required by nor mentioned in the Estates Code, a guardian ad litem customarily files "a report with the court outlining what has been done and describing the conclusions reached." *Thomas M. Featherstone, Jr. et al.*, 3 TEX. PRAC. GUIDE: PROBATE § 17.117 (2022–23).

Here, the county court appointed Homolka as guardian ad litem on April 20, 2021. In its order doing so, the county court directed Homolka "to file a written report with the Court concerning the best interest" of Judy. On May 3, 2021, at Homolka's request, the county court held an emergency hearing regarding concerns expressed about Judy's medical care. At the end of the hearing or on the following day, the county court discharged Homolka as guardian ad litem and appointed her

as temporary guardian of Judy's person. Thus, Homolka served as guardian ad litem for about two weeks in total. The county court did not appoint anyone else as a guardian ad litem after it discharged Homolka from this position and appointed her as temporary guardian of Judy's person.

Despite the brevity of her tenure as guardian ad litem, Homolka prepared a report of some kind, but she either did not file it with the clerk's office or else did so but the report was withheld from the file. The record shows that the county court referred to the report as "filed" but ordered it to "retain non public status." The basis for the county court's decision to do so is not apparent from the record.

Nonetheless, even if the county court erred in restricting access to the report and likewise erred in not ordering the guardian ad litem to produce her case file, the harms that Staci invokes relate to the guardianship of her mother's person. Staci complains that due to the guardian ad litem's advocacy, she was displaced as the person responsible for making medical decisions for her mother. Staci further complains that the guardian ad litem's advocacy jeopardized her application to be appointed as the guardian of her mother's person. But these complaints, which concern who should have been or ultimately would be responsible for Judy's care, became moot when Judy died. *See Easterline*, 49 S.W.2d at 428–31 (holding when ward dies, probate court loses jurisdiction save for settling and closing guardianship and guardian can no longer act on behalf of dead ward); *In re Guardianship of*

27

*Venegas*, 615 S.W.3d at 375–76 (concluding appeal was mooted by death of ward because sole disputes concerned whether trial court erred in finding ward was incapacitated and in granting application seeking guardianship of ward's person).

We may not reverse the county court's judgment on the basis of an error of law unless the error "probably caused the rendition of an improper judgment" or "probably prevented the appellant from properly presenting" her appeal. TEX. R. APP. P. 44.1(a). Given her mother's death and the corresponding mootness of all issues relating to her mother's guardianship, the ostensible errors relating to the guardian ad litem's report and guardian ad litem's case file did not cause the rendition of an improper judgment or prevent Staci from properly presenting her appeal in this court. Therefore, we overrule Staci's seventh and twelfth issues.

**Audio-Visual Recording of Emergency Hearing**

In her eleventh issue, Staci contends the county court erred in denying her request for an electronic copy of the emergency hearing, removing the audio-visual recording from the county court's website after she inquired about obtaining a copy, and disallowing the court reporter from making a transcript of the hearing. Staci maintains that these decisions violate her right to access the record and prevented her from obtaining a record of the hearing, which is necessary for her appeal.

### *Standard of Review*

A trial court abuses its discretion when it unlawfully interferes with a party's right to obtain a record of the proceedings. *See Lesikar v. Anthony*, 750 S.W.2d 338, 339–40 (Tex. App.—Houston [1st Dist.] 1988, orig. proceeding) (per curiam) (holding trial court abused discretion by directing court reporter to turn over notes, records, transcripts, and copies to court to prevent party from obtaining hearing transcript). We therefore review a court's rulings that affect a party's ability to obtain a transcription of a hearing or other proceeding for an abuse of discretion. *See id.*

### *Analysis*

The county court held the May 2021 emergency hearing by Zoom. Though three witnesses testified at the hearing, the court reporter represented that no record was made of the hearing. The court reporter indicated that no party had requested that the hearing be conducted on the record. Nothing in the record contradicts the court reporter. Thus, the only recording of the hearing that exists is the one made of the Zoom proceeding itself. This recording apparently was available for viewing on the county court's or clerk's website for a period of time, but it has since been removed, and Staci asserts that the county court or court reporter has denied her request for a copy of the Zoom recording of the emergency hearing.

An appellate procedural rule provides that "unless excused by agreement of the parties," a court reporter must "attend court sessions and make a full record of

29

the proceedings." TEX. R. APP. P. 13.1(a). But this rule is contradicted by a statute that provides a court reporter need only do so on request. TEX. GOV'T CODE § 52.046(a). Our court and others have held that the statute prevails over the rule. *See Nicholson v. Fifth Third Bank*, 226 S.W.3d 581, 583 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing prior decisions for proposition that First Court and other courts have held that rule conflicts with statute and statute prevails over rule); *see also Callejas v. Fed. Nat'l Mortg. Ass'n*, No. 01-10-00932-CV, 2011 WL 2923759, at *1 (Tex. App.—Houston [1st Dist.] July 21, 2011, pet. dism'd w.o.j.) (mem. op.) (stating party must request record of hearing be made to obtain reporter's record).

Here, the record does not show that Staci or anyone else requested that the court reporter attend and report the emergency hearing. On the contrary, the court reporter has indicated that she did not do so because no one requested she do so. Thus, there is no record of the emergency hearing that Staci has a right to request, and she cannot claim the court or court reporter erred in failing to prepare one. *See, e.g.*, *Smith v. Madera Residential–Rock Creek Apts.*, No. 01-21-00443-CV, 2022 WL 17835217, at *3 (Tex. App.—Houston [1st Dist.] Dec. 22, 2022, no pet.) (mem. op.) (holding party could not show error in failure to make trial record given that record did not show he requested record or objected to absence of court reporter).

The existence of an audio-visual recording of the Zoom hearing does not alter this result. The record on appeal consists of the clerk's record and reporter's record,

the latter of which is generated by the court reporter. TEX. R. APP. P. 34.1, 34.6(a). We are not permitted to consider materials outside of the clerk's and reporter's records. *See Tex. Windstorm Ins. Ass'n v. Jones*, 512 S.W.3d 545, 552 (Tex. App.— Houston [1st Dist.] 2016, no pet.) (citing Rule 34.1 for proposition that evidence not contained in appellate record is not properly before us on appeal). Hence, unless a hearing held by Zoom is reported by the court reporter, it generally cannot be made part of the appellate record and we cannot consider an unreported hearing on appeal.

Holding hearings by Zoom is a relatively recent development. Texas courts began doing so as a precautionary measure during the Covid-19 pandemic. They have since continued to do so as a matter of administrative convenience. The recording generated when a hearing is held by Zoom is not a substitute for a proper reporter's record. When a court reporter prepares a transcript of a hearing, the reporter certifies the transcript is a true and correct transcription of the proceeding. *See* TEX. R. APP. P. 35.3(b) (providing that reporter is responsible for preparing and certifying reporter's record upon request and payment after notice of appeal filed). It is not possible for a court reporter to certify the accuracy and completeness of a transcript of a proceeding that no court reporter personally attended and reported.

Our appellate procedural rules do anticipate that a proceeding may sometimes be electronically recorded in lieu of stenographic reporting. TEX. R. APP. P. 34.6(a)(2). In such instances, these electronic recordings may be made part of the

reporter's record via "certified copies of all tapes or other audio-storage devices on which the proceedings were recorded." *Id.* But this rule likewise envisions the attendance and participation of a court recorder capable of certifying that the recordings are true and correct ones. *See id.*; RULE 2, RULES GOVERNING THE PROCEDURE FOR MAKING A RECORD OF COURT PROCEEDINGS BY ELECTRONIC RECORDING, *reprinted in* TEXAS RULES OF COURT: STATE 347 (2023) (setting forth duties of court recorders, which include assuring recording system is functioning so that transcribable recording is made, making detailed log of proceedings while recording, and preparing or obtaining certified copy of recording); *see also* TEX. R. APP. P. 13.2 (mirroring aforementioned Rule 2 in part and specifying in particular that court recorder must ensure recording system functions properly throughout proceeding and that complete, clear, and transcribable recording is made). Therefore, a hearing held by Zoom that is not recorded by a court recorder cannot qualify for inclusion in the reporter's record under these electronic-recording provisions even if the hearing was otherwise recorded by Zoom or some other associated software.

Moreover, the Texas Supreme Court has only authorized the use of electronic recording in certain courts, and the courts of Fort Bend County are not included in this authorization. *See* RULES GOVERNING THE PROCEDURE FOR MAKING A RECORD OF COURT PROCEEDINGS BY ELECTRONIC RECORDING, *reprinted in* TEXAS RULES OF COURT: STATE 347 (2023); *see also Ex parte Occhipenti*, 796 S.W.2d 805, 806–07

32

(Tex. App.—Houston [1st Dist.] 1990, orig. proceeding) (concluding that court of appeals could not consider recordings of hearings because Texas Supreme Court had not authorized courts of county in question to electronically record proceedings).

On this record, we hold the county court did not unlawfully interfere with Staci's right to obtain a reporter's record of the emergency hearing and therefore did not abuse its discretion by not making available a copy of the audio-visual recording generated by Zoom or associated software. Staci neither requested that the court reporter attend and report this emergency hearing nor objected to the court reporter's failure to attend the hearing, and Staci cannot use the audio-visual recording generated by Zoom or associated software as a substitute for a proper reporter's record of the hearing on appeal. Accordingly, we overrule Staci's eleventh issue.

**Tavi's Continued Participation After Nonsuit**

In her third issue, Staci argues the county court erred in overruling her objection to Tavi's continued participation in the case, including filing documents and opposing relief Staci sought, after Tavi had nonsuited her guardianship application. Staci maintains that the county court effectively allowed Tavi to withdraw her nonsuit for the sole purpose of impeding Staci's right to be heard on matters, including Staci's applications for reimbursement and attorney's fees. Staci argues that she was harmed by Tavi's continued participation because Tavi's opposition to the aforementioned applications increased Staci's attorney's fees.

### *Standard of Review*

When a party nonsuits her claims and there are no claims pending against her, she becomes a nonparty. *See, e.g.*, *White v. Pei*, 452 S.W.3d 527, 534 n.5 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (noting two persons had nonsuited their claims and were no longer parties). Whether a nonparty may continue to participate in the suit under these circumstances is a question of standing, which we review de novo. *See Phillips v. Phillips*, 244 S.W.3d 433, 435 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (reviewing de novo issue asserting nonparty could not file motion to show authority because he lacked standing, which implicates court's jurisdiction).

### *Analysis*

On June 10, 2021, Tavi nonsuited her guardianship application, which had been mooted by her mother's death. That same day, Tavi also joined Homolka in filing a joint final report requesting that the guardianship proceeding be closed. The date-time stamps affixed to these documents by the clerk's office show that Tavi and Homolka filed the joint final report four minutes before Tavi nonsuited her guardianship application. Thus, to the extent Staci complains that Tavi was a nonparty when she joined Homolka in filing the joint final report, the record does not support this complaint.

The next day, on June 11, 2021, the county court signed its order closing the proceeding. But this order was not filed with the clerk's office until June 30, 2021.

Unaware of the county court's as yet unfiled order, Staci filed her applications for reimbursement of expenses and attorney's fees on June 23, 2021. The following day, Tavi filed a response in opposition, in which she requested that the county court dismiss both of Staci's applications for lack of subject-matter jurisdiction. Similarly, when Staci on July 7, 2021, moved for reconsideration of the county court's June 11 order closing the guardianship proceeding, Tavi filed a response in opposition three weeks afterward. Thus, there is no question that Tavi was a nonparty when she filed these responses opposing the relief that Staci sought from the court.

In general, a nonparty lacks standing to engage in motion practice in the trial court. *See, e.g.*, *Phillips*, 244 S.W.3d at 434–35 (holding appellant's former lawyer, who represented her at trial, was nonparty who lacked standing to file motion to show authority directed at lawyer who represented her after trial); *Whatley*, 302 S.W.3d at 327–28 (holding person who lacked justiciable interest in guardianship proceeding did not have standing to file motion to recuse trial judge); *In re Pringle*, 862 S.W.2d 722, 724 (Tex. App.—Tyler 1993, no writ) (holding that nonparties lacked standing to file motion to modify conservatorship); *S. Cty. Mut. Ins. Co. v. Powell*, 736 S.W.2d 745, 748 (Tex. App.—Houston [14th Dist.] 1987, orig. proceeding) (holding only parties have standing to file new-trial motion). Likewise, a nonparty generally cannot bring an appeal due to lack of standing. *See BASF Fina Petrochemicals Ltd. P'ship v. H.B. Zachry Co.*, 168 S.W.3d 867, 870 (Tex. App.—

35

Houston [1st Dist.] 2004, pet. denied) (recognizing law is settled that only parties can appeal from trial court's judgment); *see, e.g.*, *In re Shockley*, 123 S.W.3d 642, 647–48 (Tex. App.—El Paso 2003, no pet.) (holding father who nonsuited paternity claim in trial court lacked standing to appeal from judgment); *Kelly v. Lee*, 736 S.W.2d 750, 750 (Tex. App.—Houston [14th Dist.] 1987, no writ) (holding nonparty lacked standing to ask trial court to set aside judgment or appeal from that judgment).

In the preceding cases, the nonparties in question all sought affirmative relief from the court. The case before us differs in that Tavi did not seek affirmative relief from the county court after nonsuiting her guardianship application. Instead, Tavi merely opposed Staci's efforts to recover expenses and fees from the ward's estate and to reopen the guardianship proceeding. But we have not been able to find any authority suggesting it is proper for one who has become a nonparty by nonsuit to continue participating in the suit in any fashion, including for the limited purpose of filing responses or participating in hearings to oppose the relief sought by a party, and it seems counterintuitive that a nonparty like Tavi should be able to do so.

Assuming without deciding that the county court erred in overruling Staci's objection to Tavi's continued participation in the suit after her nonsuit, we hold any error is harmless and thus not a ground for reversal. The principal dispute between Staci and Tavi after the latter's nonsuit concerned whether the county court had jurisdiction to entertain Staci's applications for reimbursement and fees. A trial

court's subject-matter jurisdiction is a fundamental prerequisite to hearing claims, such that a court may not ignore the possibility it lacks jurisdiction. *See James v. Underwood*, 438 S.W.3d 704, 713 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (per curiam) (observing that whether trial court has subject-matter jurisdiction is threshold issue that court can address on its own motion at any time). A case can become moot at any point, and a court must take into account intervening events that may render a case moot and thereby deprive the court of jurisdiction. *In re Marriage of Comstock*, 639 S.W.3d 118, 127 (Tex. App.—Houston [1st Dist.] 2021, no pet.). Thus, while the county court erred in concluding it lacked subject-matter jurisdiction to hear Staci's applications, the court had to decide whether and to what extent Judy's death mooted the guardianship proceeding irrespective of whether Tavi raised this jurisdictional issue or had the right to raise it after she became a nonparty.

We cannot reverse the county court's judgment based on an error of law unless we conclude the error probably caused the rendition of an improper judgment or probably prevented Staci from properly presenting her appeal to us. TEX. R. APP. P. 44.1(a). The county court's overruling of Staci's objection to Tavi's continued participation in the suit after nonsuit did not result in either type of error, given the court's duty to address its own subject-matter jurisdiction after Judy's death. Any increase in fees resulting from the jurisdictional dispute between Staci and Tavi also does not satisfy the applicable standard for harm, in that these increased fees bear no

37

relation to the county court's judgment or the presentation of the issues on appeal. Because the complained of error did not harm Staci, we overrule her eleventh issue.

**Judicial Misconduct Due to Bias or Partiality**

In her eighth issue, Staci contends the county court's judgment should be reversed on the basis that the county court repeatedly exhibited bias or partiality against her. She posits that the following actions of the county court demonstrate its bias: signing the order closing the guardianship proceeding on June 11, 2021, but failing to file it until June 30, 2021, allowing the temporary guardian to seek her attorney's fees and awarding them but refusing to hear Staci's applications for reimbursement of expenses and attorney's fees, allowing Tavi to continue participating in the suit after she nonsuited her guardianship application, and denying Staci's requests for copies of the Zoom audio-visual recording of the May 3, 2021 emergency hearing and documents, including the guardian ad litem's case file.

*Standard of Review*

To reverse a judgment due to judicial misconduct resulting from bias or partiality, we must find the trial court actually committed some judicial impropriety and the impropriety probably resulted in prejudice. *Haynes v. Union Pac. R.R. Co.*, 598 S.W.3d 335, 350 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd); *In re Douglas*, 333 S.W.3d 273, 295 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

38

*Analysis*

Staci implicitly maintains the county court's bias and resulting misconduct are evident from several adverse rulings. But adverse rulings alone generally do not suffice to show impropriety. *Lambertz v. Montz*, No. 01-11-00491-CV, 2012 WL 3042996, at *2 (Tex. App.—Houston [1st Dist.] July 26, 2012, no pet.) (mem. op.). Only in rare circumstances do adverse rulings establish the degree of favoritism or antagonism necessary to show judicial partiality. *Allstar Nat'l Ins. Agency v. Johnson*, No. 01-09-00322-CV, 2010 WL 2991058, at *2 (Tex. App.—Houston [1st Dist.] July 29, 2010, no pet.) (mem. op.). Ordinarily, the remedy for a party who is dissatisfied with trial-court rulings is to challenge them on appeal on the merits under the appropriate standard of review, rather than on the basis of partiality. *See id.*

The only evidence of bias Staci refers to apart from the rulings themselves consists of a single remark made by the county court judge during the August 23, 2021 hearing on Staci's motion for reconsideration. Staci relies on the judge's remark that she thought Homolka's fees as temporary guardian were "a little bit more of the fixed matter" than Staci's applications for reimbursement and fees and that she did not think "there's any contest or scrutiny" with respect to Homolka's fees. When viewed in context, however, the county court judge's remark is innocuous.

At one point during the hearing, Homolka noted that her fee application as temporary guardian remained pending but that she had been discharged. She

inquired whether the judge wanted her to be present at the follow-up hearing, scheduled for two days later, when the court would render its ruling on Staci's motion for reconsideration. The judge indicated she did not necessarily think Homolka needed to attend, reasoning that Homolka's attorney's fees in her role as temporary guardian presented a different issue than Staci's applications for reimbursement and attorney's fees because Homolka only did the work the court appointed her to do, and no one had filed a motion contesting the fees that Homolka sought. Staci's lawyer then clarified that, if the county court reopened the guardianship proceeding, Staci intended to contest Homolka's fees on the basis that her fee application was not verified. Nothing about this exchange suggests favoritism or antagonism on the county court judge's part. The judge did no more than differentiate between Homolka's and Staci's respective applications on the grounds that Homolka's application was more limited in that she only did what the court asked her to do and, unlike Staci's applications, had not drawn an objection.

Even if the county court judge was mistaken in one or more respects—for example, in her motion for reconsideration, Staci had objected that Homolka's fee application was unverified—being mistaken does not constitute proof of bias. A trial judge's remarks must exhibit a favoritism or antagonism so deep-seated that they fairly indicate it is impossible for her to render a fair and impartial judgment. *Shaw v. Harris Cty. Guardianship Program*, No. 01-17-00214-CV, 2018 WL 3233237, at

40

*6 (Tex. App.—Houston [1st Dist.] July 3, 2018, pet. denied) (mem. op.). Expressions of anger, annoyance, dissatisfaction, or impatience are not enough. *Id.*; *see also Metro. Transit Auth. of Harris Cty. v. Hunter*, No. 01-16-00021-CV, 2016 WL 7164033, at *1 (Tex. App.—Houston [1st Dist.] Dec. 8, 2016, no pet.) (mem. op.) (stating judicial remarks at trial that are critical of or even hostile to counsel, parties, or their cases ordinarily do not support challenge for bias or partiality). Here, the record does not reflect even mild dismay or disapproval on the judge's part.

Viewed as a whole, the record does not divulge any evidence of judicial misconduct resulting from bias or partiality. We overrule Staci's eighth issue.

### Unspecified Objections to Reports and Other Pleadings

In her first and second issues, Staci argues in part that the county court's final judgment is erroneous because the county court disregarded her right to due process by closing the proceeding without resolving her pending claims for expenses and fees and because Tavi and Homolka did not provide notice for a hearing or submission on the papers of their joint motion seeking closure of the proceeding.

To the extent Staci's complaints are directed at the county court's closure of the guardianship proceeding before considering her applications for reimbursement and attorney's fees, we have decided that issue in her favor on jurisdictional grounds in connection with her fourth and fifth issues concerning the county court's refusal to hear her applications and the denial of her motion for reconsideration. Thus, we

41

need not address whether the county court also erred in signing a final judgment without first considering her applications for reasons of due process or notice. *See* TEX. R. APP. P. 47.1 (requiring us to issue written opinion that is as brief as practicable but addresses all issues raised and necessary to final disposition of appeal); *In re Guardianship of Macer*, 558 S.W.3d 222, 231 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (declining to consider additional issues that could only result in same relief already granted on another basis if decided in appellant's favor).

However, in her first and second issues Staci also contends in part that the county court erred in closing the guardianship proceeding before it decided several other "matters of unfinished business" and before she "had the opportunity to object to and be heard regarding certain documents and pleadings filed by other parties." In particular, Staci maintains that she was denied the "opportunity to be heard regarding the pleadings and statements made in the Final Report" jointly filed by Tavi and Homolka. She further argues that she was deprived of the opportunity to object to false "statements" Homolka made in the "Guardian Ad Litem Report."

That said, in her appellate brief, Staci does not elaborate on these additional complaints. She does not identify the specific objections she would have made but for closure of the proceeding, discuss the relevant facts underlying these objections, or cite legal authority supporting her objections. Her failure to provide meaningful substantive argument regarding these additional complaints results in their waiver

on appeal. *See* TEX. R. APP. P. 38.1(i) (requiring appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Guimaraes v. Brann*, 562 S.W.3d 521, 537–38 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (stating that failure to provide substantive analysis of issues presented results in waiver of complaint on appeal); *see, e.g.*, *Owens-Collins v. Drexler*, No. 01-19-00520-CV, 2020 WL 7062322, at *11 (Tex. App.—Houston [1st Dist.] Dec. 3, 2020, pet. denied) (mem. op.) (holding that party waived objections to temporary guardian's final account by failing to include substantive discussion or analysis about account's deficiencies in her brief).

We therefore overrule Staci's first and second issues to the extent she seeks to require the county court to consider unspecified objections to the joint final report, guardian ad litem's report, or other pleadings or statements made below.

Finally, in her first and second issues, as well as in several other of her issues, Staci argues that the county court's rulings violated her constitutional right to be heard or other constitutional rights she possesses (in addition to the due-process argument noted and disposed of above). However, Staci has not provided adequate substantive argument regarding the scope of these rights or their violation. We decline to step into the role of the appellant's counsel and independently research and analyze these issues and compose adequate arguments on her behalf. By failing to adequately brief these constitutional issues, Staci has waived them on appeal. *See,*

43

*e.g.*, *Shoemaker v. State for Protection of C.L.*, 493 S.W.3d 710, 720 n.5 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (holding appellant waived constitutional challenge by supporting it with two-sentence conclusory argument in his brief).

## CONCLUSION

We reverse the county court's judgment and remand this cause to the county court for further proceedings consistent with our opinion. In doing so, we note that our remand is for the limited purposes expressly stated in our opinion. Judy has passed away, and her death moots the central issues in this guardianship proceeding and requires the county court to settle and close the guardianship as soon as possible.


Gordon Goodman
Justice

Panel consists of Justices Goodman, Landau, and Rivas-Molloy.